CORTELYOU et al. v. CHARLES E. JOHNSON & CO.

(Circuit Court of Appeals, Second Circuit. March 16, 1906.)

No. 139.

**1. PATENTS—CONTRIBUTORY INFRINGEMENT—LIMITATION OF DOCTRINE.**

The doctrine of contributory infringement should be limited to cases where the articles sold are either parts of a patented combination or device, or are produced for the sole purpose of being so used as to constitute infringement, and should not be extended to apply to ordinary and staple articles of commerce, used in connection with a patented machine, because the patentee sells or licenses such machine upon the condition that he alone shall furnish such articles. Townsend, Circuit Judge, dissenting.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, §§ 400–402.

Contributory infringement of patents, see note to Edison Electric L. Co. v. Peninsular Light, P. & H. Co., 43 C. C. A. 485.]

**2. SAME—SUFFICIENCY OF PROOF.**

Evidence considered, and *held* insufficient to sustain the burden of proof resting on a complainant to show that defendant had knowledge of restrictions contained in the licenses granted by complainant to users of its patented machines, so as to charge defendant with liability for contributory infringement in selling an article to such users to be used in violation of such restrictions.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the Circuit Court of the United States for the Southern District of New York, awarding an injunction restraining the defendant from selling ink to the licensees of a machine known as the "rotary neostyle." This machine is made under letters patent No. 584,787, granted June 22, 1897, to Henry W. Lowe, and is sold with the following notice attached:

"License Agreement.

"This machine is sold by the Neostyle Company with the license restriction that it can be used only with stencil paper, ink, and other supplies made by the Neostyle Company, New York City."

The defendant is not charged with direct infringement of the Lowe patent, but is charged with contributory infringement, in violation of the license agreement.

The opinion of the Circuit Court is reported in 138 Fed. 110.

Francis T. Chambers, for appellant.

Samuel Owen Edmunds and Edmund Wetmore, for appellees.

Before COXE and TOWNSEND, Circuit Judges, and HOLT, District Judge.

COXE, Circuit Judge. In the case of Cortelyou v. Lowe, 111 Fed. 1005, 49 C. C. A. 671, this court fully accepted and approved the decision in the Heaton Peninsular Button-Fastener Case (77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728), and by so doing made it, in effect, the law of the Second Circuit. The opinion of Judge Lurton in the Peninsular Case covers the entire field of controversy and presents the

arguments, and all the arguments, in support of the complainants' contention. It is a clear, comprehensive and convincing exposition of the law as applicable to the facts as stated in the bill and admitted by the demurrer, and, upon similar facts, is as controlling upon us as if it were originally promulgated by this court. The fact that the court is now differently constituted is, of course, quite immaterial. If entitled to be considered at all upon a question of general significance, like that under consideration, it should operate as an additional reason for adhering to existing conditions. It is the court, not the individuals composing it, that declares the law; and it would be unseemly, to say the least, to review propositions previously established, even though as an original question we might have been led to a different conclusion. Cimiotti Co. v. Nearseal Co., 123 Fed. 479, 59 C. C. A. 58.

The Lowe Case arose upon the same general contention which is made in the case at bar, namely, the alleged unlawful sale of ink to the licensees of the Neostyle machine. The injunction order, which was there affirmed, enjoined the making, selling or offering for sale of any duplicating ink adapted for use on restricted rotary neostyles with intent that such ink shall be so used. It is true that an estoppel was alleged in the bill by reason of the fact that the defendant, Harry W. Lowe, is the inventor and had assigned to the complainant the patent not only but the secrets and formulas for the manufacture of the ink and had agreed not to engage in the manufacture and sale of said ink. Harry W. Lowe did not defend the suit and it is very doubtful whether the estoppel alleged could be urged against John C. Lowe. Granting that it could be, it is apparent that it was not relied upon either in the Circuit Court or in this court, where the affirmance rested solely upon the concurrence of the court in the doctrine of the Peninsular Case.

No two cases are identical upon the facts. Differences can always be pointed out, but the question for the court to determine is are the differences of such a character as to induce the court to believe that if the facts in the second case had been present in the first case the same result would have been reached; in other words, are the cases the same in principle? The Peninsular and Lowe Cases have been generally followed in this and other circuits, several of the causes being unreported, but see Cortelyou v. Carter (C. C.) 118 Fed. 1022; Brodrick Co. v. Mayhew (C. C.) 131 Fed. 92, affirmed (C. C. A.) 137 Fed. 596. We therefore feel ourselves controlled by the Peninsular and Lowe Cases upon every point where the facts cannot be fairly distinguished, but, on the other hand, for reasons hereafter stated, we are of the opinion that the doctrine of those cases should not be extended to cover cases where the record shows a substantial distinction.

The majority of the court, consisting of Judge HOLT and the writer, is of the opinion that the decree at bar pushes the doctrine of contributory infringement to its extreme limits if, indeed, it does not transgress those limits. The doctrine originated in a desire to secure to a patentee complete protection in all the rights granted him by the patent, but it was confined to those rights; it went no farther. One who sold an element of a patented combination, which could not be used except in an infringing combination or device, was not permitted to reap the

benefits of such sale. He did not himself directly infringe, but he promoted the infringement of others by putting in their hands a device which could only be used in violation of the patent. When confined to articles, whether covered by the patent or not, which are made for the express purpose of inducing infringement and are not intended for any legitimate use, the doctrine of contributory infringement is logical, just and salutary. But we doubt the wisdom of extending it to the ordinary commodities of life, used in connection with a patented machine, because the patentee sells or licenses the machine upon the condition that he alone is to furnish these commodities. Care should be taken that the courts, in their efforts to protect the rights of patentees, do not invade the just rights of others, engaged in legitimate occupations, by creating new monopolies not covered by patents and by placing unwarrantable restrictions upon trade. We think it is clear that the doctrine may be carried far enough to produce such results. For instance, should the patentee of a fountain pen, by such a notice as we have under consideration, be permitted to hold as an infringer one who sells ink to the owner of the pen even though he knows of the restriction? To compel the dealer to make inquiries and take the precautions necessary to save himself from being sued as an infringer would place intolerable burdens upon business. Should the patentee of a motor car, by such proceedings, be able to hold the monopoly on all gasoline used in its propulsion, or the patentee of a stove or a refrigerator have an action of infringement against one who furnishes ice or coal, respectively, to its owner? These may seem to be extreme cases and yet they are not so far beside the mark as may at first appear. It was stated at the bar that among the "supplies" necessary for the operation of the neostyle were oil and varnish. It is not easy to perceive how a machinist who lubricates the machine and the painter who varnishes it can escape the charge of infringement. If the doctrine be driven to its ultimate conclusion the merchant and the consumer may find themselves enmeshed in a network of monopolies embracing all the necessaries of life. No one may safely sell coffee to the consumer but the patentee of his coffee mill, no one can furnish him flour but the patentee of his baking pans and he may yet be compelled to buy milk from the patentee of his milk can and soap from the patentee of his bath tub. It is manifest that the doctrine may be expanded ad infinitum. We incline to the opinion that the line should be drawn to include those articles which are either parts of a patented combination or device or which are produced for the sole purpose of being so used and to exclude the staple articles of commerce.

For these reasons we think that the complainants should be confined strictly to existing law and that the doctrine should not be expanded so as to brand as a wrong-doer one who, having no agreement express or implied with the patentee, sells to the public commodities needed in the ordinary affairs of life.

We are of the opinion also that the complainants have not shown sufficient notice of the terms of the license agreement to bring them within the law of the Peninsular Case. In that case the bill alleged,

and the demurrer admitted, that the defendants "with full knowledge of this method of putting complainants' monopoly in general use are making and selling staples adapted only to use with these machines." In this case, as in all cases, the burden is on complainants to prove infringement by a preponderance of evidence. The defendant's knowledge of complainants' "selling plan" is specifically alleged in the bill and denied in the answer. It must be proved. The presumption drawn from the fact that the machine was largely advertised and therefore the officers of the defendant must have known its character is entitled to little weight in the face of the explicit testimony of these officers that they did not know. Having assumed that they had knowledge of the machine the next presumption is that "they doubtless inspected the Neostyle Company's ink used thereon." All this is plausible but insufficient.

The foundation of the complainants' action is defendant's knowledge, not of the machine, not of the ink, but of the restriction agreement which alone made the sale of ink to the owners of the neostyle machines unlawful. The defendant had a right to sell to the owner of a machine, sold without the restriction, and there was nothing unlawful in selling to an owner of a machine having the notice thereon unless the defendant knew of such notice. The defendant is an old and well known establishment, having been engaged in the manufacture and sale of ink for many years. The proof shows that it made six sales in all of stock ink to be used on neostyles, but it also appears that there were a number of machines in use at the time of defendant's sales which were sold free from all restrictions and there is no proof, except in one instance, that there was a "license agreement" on the machine at the time of the sale by defendant, much less that the defendant knew of the agreement. In no instance did the defendant solicit the sale; it merely booked orders received. The only testimony which tends to show knowledge, and the only testimony establishing a sale in the Southern District of New York, relates to two sales to Barney Gerber who was employed by the complainants to procure a sale, in New York, of ink for a machine having on it the license agreement. In fact the notice was not the one now relied on, but one which was abandoned several months before any of the acts complained of in this controversy.

We are of the opinion that this transaction offers insufficient basis to sustain this action. The sale was not solicited by the defendant, but by the complainants. As Gerber was acting for the complainants it is clear that he was not induced to infringe relying upon any statement of defendant's agent who made the sale. They could not suffer any injury from such a transaction. Furthermore, though we are convinced that Randall, defendant's salesman, read the restriction notice it is evident that he misunderstood its import as he assured Gerber that no trouble would follow from buying the defendant's ink as it was not patented.

We are convinced that the preponderance of evidence is to the effect that the defendant did not know the nature of the accusation against it until the bill was filed. No reason appears why the com-

plainants should not have notified the defendant by letter, or otherwise, of the precise nature of their contention as they seem to have done in other instances.  Instead of doing so they have preferred to leave this most important branch of their case to conjecture and to the unsatisfactory testimony of one who was employed by them to play the part of a contributory infringer at the alleged instigation of the defendant's salesman who was located in New York.

The decree is reversed and the cause is remanded to the Circuit Court with instructions to dismiss the bill.

TOWNSEND, Circuit Judge.  I concur in the reversal of the decree solely on the ground that the evidence is insufficient to show that the defendant had notice that the Neostyle for which the ink was ordered had been sold under any restriction.

I cannot concur in the argument of the majority of the court that a theoretical public policy should be permitted to deprive a patentee of his rights conferred by the grant of the patent.  The Supreme Court of the United States, referring to the decisions declaring the rights of the patentee and their limitations, says in the recent decision in Bement v. Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058:

"These cases are cited in the opinion of the court in the case of Heaton Peninsular Co. v. Eureka Specialty Co., supra.  Notwithstanding these exceptions, the general rule is absolute freedom in the use or sale of rights under the patent laws of the United States.  The very object of these laws is monopoly, and the rule is, with few exceptions, that any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee. for the right to manufacture or use or sell the article, will be upheld by the courts."

And, as the Court of Appeals said in Heaton Peninsular Co. v. Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728:

"As to the right to use the invention. he, the purchaser, is obviously a licensee, having no interest in the monopoly created by the letters patent."

In my view of the case, the reasoning of the majority of the court is contrary to the law as laid down by the Supreme Court and by the courts in the various circuits, and virtually reverses our decision in 111 Fed. 1005, 49 C. C. A. 671, adopting and approving that of the Circuit Court of Appeals for the Sixth Circuit in Heaton Peninsular Co. v. Specialty Co., supra.    But, apart from these considerations, the whole argument ab inconvenienti of the majority of the court, based on the dangerous doctrine that public policy may nullify existing laws because said laws may be perverted by future unwarranted applications or extensions thereof, seems to be fallacious in theory and unwarranted in fact.    It is met by the admission of the appellants, which is abundantly established by the authorities, that by a properly worded contract in the form of a lease all the advantages sought to be secured by the owner of the patent may be effectually protected.    The only contention here is that this is a case of a sale, and that a sale of a patented article removes it from the monopoly of the patent. Furthermore, the self-interest of the patentee, seeking to derive a

profit from his patent, will sufficiently protect the public against burdensome or unreasonable restrictions upon its use. Let us suppose, however, that a patentee having a valuable invention wishes to protect himself against the ruin of its reputation by the use of improper or dangerous material. Will it be claimed in the case of a patent gun, for example, adapted for use only with a certain kind of powder, that the owner of the patent may not sell the gun on condition that only said certain kind of powder shall be used therein? Or, in the case of a delicate mechanism, that it shall only be used with a certain kind of oil or chemical preparation furnished by the owner of the patent? Or suppose, as in the case at bar, the patentee, having created an invention which is of great benefit to the public, finds that his chief profit may be derived from selling the patented article at a nominal figure to the public, on condition that the public shall use certain unpatented materials in connection with it. Is it so that a patentee who has a right to withhold the use of his invention altogether from the public may not thus secure the profit from its use and greatly increase its sales by selling it at a price below its cost, under conditions whereby the sole profit to be derived by him from the benefit thus conferred upon the public shall be by the purchase of materials to be provided by him? If a patentee, desiring to protect himself in the use of a lamp, for example, may do so by a lease on the condition that only a certain kind of oil shall be used therein, may he not, in the same way, protect himself by sales of mantels to be used only on said lamps, but which could not be leased because they perish in the using?

If any attempts to unwarrantably impose an onerous monopoly, such as are suggested by the majority opinion, should hereafter be so presented as to call for the interposition of a court of equity, we think the machinery of such court would be adequate for that purpose. It will be sufficient, however, to consider the question when it arises. No such question is presented in this case.