A. B. DICK CO. v. HENRY et al.

(Circuit Court, S. D. New York. January 11, 1907.)

**1. Patents—Contributory Infringement—Inducing Purchaser to Violate License Restriction.**

Complainant manufactured a patented duplicating machine known as the "rotary mimeograph," and sold the same subject to a license restriction that it might be used only with paper and ink and other supplies made by complainant. Defendants made a special ink designed for use on such machine and similar ones and with knowledge of such restriction sold the same to the owner of one of complainant's machines for use thereon, advising that it be placed in one of complainant's cans. *Held*, that defendants were chargeable with contributory infringement of the patent.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 401.

Contributory infringement of patents, see note to Edison Electric L. Co. v. Peninsular Light, P. & H. Co., 43 C. C. A. 485.]

**2. Same—Suit for Infringement—Equity Jurisdiction.**

The fact that a complainant which made and sold a patented machine subject to a license restriction that it should be used only with ink made by complainant, requested a purchaser of one of its machines to give defendants an opportunity to sell her ink for use thereon does not relieve defendants from the charge of contributory infringement where they made such sale with full knowledge of the license restriction, and for the purpose of inducing and procuring its violation by the purchaser, nor does the fact that complainant suffered no damages preclude it from maintaining a suit in equity to enjoin such infringement.

This is a suit in equity for alleged contributory infringement of United States letters patent Nos. 746,931 and 749,983, issued December 15, 1903, and January 19, 1904, respectively, to complainant as assignee of Albert B. Dick.

Samuel Owen Edmonds (Edmund Wetmore, of counsel), for complainant.

A. Bell Malcomson, for defendants.

RAY, District Judge. The patents in suit cover the stencil-duplicating machine known as the "Rotary Mimeograph." In using this duplicating machine it is necessary to use ink of a peculiar make and composition if good results are to be obtained and the machine made a success. This patented machine was placed on the market in August, 1904. As to this ink the president of the complainant company says:

"The ink used on this type of machine is the result of long and protracted experiments of color-makers and experts employed for this purpose, repeated tests under varying conditions so as to adapt the ink to various climates and so as to have it work in harmony with the stencil-paper without injury. What I mean by this is, that some years ago I discovered an ink being sold for stencil use which contained a large proportion of benzine, and as benzine will dissolve the wax on the stencil-sheets it was ill adapted for the purpose and soon destroyed the stencil and rendered it useless. We made hundreds of experiments, changing the formula each time, and finally rested with an ink which is thoroughly well adapted for the purpose intended. I found in practice that each type of duplicating machine requires an ink having peculiar characteristics in order to get the best result from the machine; and it was an ink of this character which we finally developed and put on the market for use on the rotary mimeograph."

All the machines sold have been parted with under a license restriction plainly and distinctly lettered on a metallic plate and affixed in plain view on each machine. This license agreement reads as follows:

"Edison Rotary Mimeograph No. 75.
"License Restriction.

"This machine is sold by the A. B. Dick Co. with the License Restriction that it may be used only with the Stencil Paper, Ink, and other Supplies.
"Made by A. B. Dick Company, Chicago, U. S. A."

This notice was also reproduced on the feed board of the machine, so that all purchasers and users of the machine who can read are charged with notice of the restriction. Each machine has another plate giving the dates of complainant's patents. It is alleged, and not denied, and the evidence shows that defendants had actual notice of this license agreement and restriction. The evidence establishes that the complainants sell the machines at a loss, less than the actual cost of making, relying on sales of supplies therefor for a profit. The complainants have sold about 11,000 of these machines under this license restriction. The complainants sell their ink intended for this machine and other supplies at a reasonable price. As to these sales the evidence of complainant says:

"This plan enables us to furnish the purchaser exclusively with the supplies to be used on the machine, thus preventing trouble and annoyance on his part, as with the supplies furnished by the Dick Company he can invariably secure the best results, not only because of their special adaptability but also because of their uniformity. Besides this, they get the benefit of all of our experiments and experiences in the use of the machine, including information as to special uses to which the machine may be put but which might not be apparent at first sight (C. Rec. p. 80). After the possible customer has been satisfied that the machine is well adapted for his purposes, and after he has made an investigation as to the cost of the machine and the cost of the supplies and he is satisfied with same, the sale is made (C. Rec. p. 77, fol. 308)."

In fact there is nothing unreasonable or extortionate in these license agreements and restrictions; the purchasers or licensees of these patented machines can take them, subject to the license restriction, or let them alone. They are not a prime necessary of life required to maintain existence nor are the supplies. They are a convenient and useful thing, and a labor saving machine. It is a special ink made specially for use on these machines. This ink is neither a staple article of commerce nor a public commodity required in the ordinary affairs of life. The same is true of defendants' ink. The evidence shows, and I find, that defendants' ink is a special ink, designed for use on this machine, and a similar one known as the "Rotary Neostyle," a patented machine sold under and with a like restriction.

The alleged contributory infringement complained of consists in the facts: (1) That one Christina B. Skou was licensee of complainant, she having purchased one of these machines with full knowledge of the restriction; (2) she used same, except in the one instance complained of, within the license agreement using thereon and therewith supplies obtained from complainants; (3) the complainants had reason to suspect and did suspect that defendants were furnishing and selling

their ink made for use on such machines to various of the licensees of complainants for the purpose of having such licensees use same on such machines bearing the license restriction and license agreement in violation thereof, defendants, as stated, having full knowledge thereof; (4) the complainants thereupon requested Miss Skou to afford defendants an opportunity to sell her ink of defendants' make for use on such machine; and this she did; (5) being given the opportunity by Miss Skou the defendants did sell to her such ink for such purpose requesting her at the same time to put same into one of complainant's cans and throw his away. The complainants did not instruct Miss Skou to lead defendants into selling her ink of their make, or to induce them so to do, but simply to afford them an opportunity. On this subject the evidence is:

"Re-d. Q. 311. Your testimony concerning what I wished you to do with regard to these defendants Henry has been so much garbled by defendants' counsel that I will ask you to state if you were instructed to lead Henry into purchasing these supplies? A. No, sir; not at all. Re-d. Q. 312. Were you instructed by me to procure him to sell you any supplies? A. No, not at all; no. Re-d. Q. 313. Were you instructed by me to do anything more than to afford him an opportunity to sell you his supplies for use on the rotary mimeograph if he chose? (Objection.) A. That is all."

The transaction between Miss Skou and Henry was as follows:

"He came in and brought with him a tube of black ink I ordered; the pound of purple ink for the rotary mimeograph, and also a part of his box machine, the lineograph, and he showed me what he thought was superior in that machine to the A B. Dick Company's box mimeograph. After explaining to me about the box machine, he noticed that I had the rotary mimeograph in the office, and he went over and examined it. Miss Bennem was working at it at the time, turning out duplicate copies from it, and he looked it over and noticed the restrictions on the machine itself, and also the restriction on the feed-board about the purchasing of the materials, and then he said he would rather not sell the purple ink for the rotary mimeograph, but he went on to say, 'I will sell it to you, but pour it into the A. B. Dick Company's can; throw my can away, because the A. B. Dick Company has given me quite some trouble in selling these supplies.' Then I took up that purple ink he had in his hand at the time, and looked at the can and there was a notice on that, 'Not sold for Licensed Machines.' I showed this to Mr. Henry, and called his attention to it—no; I again asked him, 'Can I use this ink on my rotary mimeograph?' and he looked at it, and said, 'Why, that's nothing; my lawyer told me to put that on.' He left the purple ink for the rotary mimeograph and I paid him for that, and I also paid him for the tube of black ink for the box machine."

As this is corroborated, I find the facts as stated, notwithstanding the denial. That defendants sold their ink of a peculiar make for use on such machines, for the purpose of enabling and inducing a licensee of complainants to violate the license restriction agreement by using such ink on this licensed machine in place and stead of the ink sold by complainants and intended for use on the licensed machine, and which the licensee had agreed to use on the machine to the exclusion of all other inks, is established by the evidence and cannot be doubted.

Are defendants guilty of contributory infringement? This is a patent not a trade-mark case. The machine was sold under the recited license agreement and restriction as to which there is no doubt, and of such license defendants, as to the particular machine, had full notice

at the time the sale of ink was made. The defendants intended to induce and procure a violation thereof, and sold this ink to Miss Skou for that purpose and in order to obtain a market for and use of their ink in place of complainant's ink. It is clearly established that the complainants having a patented duplicating machine which they are introducing into the trade and selling, and which to produce a good result and prove a success must be used with ink of a peculiar make, have sold their machines under this license restriction only. The complainants seek to introduce and build up a market for their machines, and of course desire to have them successful. They manufacture special ink to be used thereon which if used produces good work or results. The complainants look to their sales of ink for profit. They have parted with their machines, and permitted others to have and use them only on condition this special ink shall be used therewith. The defendants have knowingly and willfully made and sold an ink for use thereon, not the same in kind and quality, to one of these licensees for the express purpose of inducing, aiding and abetting her to violate this license agreement or restriction by using the licensed machine in a way she has agreed she will not use it, and in a way she has no right to use it. That such license restrictions are lawful, good, valid, and binding in the case of patented machines and articles has been established by a long line of decisions. Also that one who knowingly and directly aids, abets, and procures a violation of such license restriction is a contributory infringer of the patent. Heaton-P. B. F. Co. v. Eureka Specialty Co. et al., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, 47 U. S. App. 146, cited and approved; Bement v. Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058; Victor Talking Machine Co. v. The Fair, 123 Fed. 424, 61 C. C. A. 58; Cortelyou et al. v. Lowe et al., 111 Fed. 1005, 49 C. C. A. 671; Rubber Tire Wheel Co. v. Milwaukee Rubber Works Co. (C. C.) 142 Fed. 531; Rupp & Wittgenfeld Co. v. Elliott et al., 131 Fed. 730, 65 C. C. A. 544; Cortelyou v. Johnson (C. C. A.) 145 Fed. 933. While this last case attacks and seeks to limit this doctrine of contributory infringement in patent cases, it expressly affirms the doctrine of the Peninsular Case, 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, and the Lowe Case, 111 Fed. 1005, 49 C. C. A. 671, and it simply reversed the court below, on the ground it was not shown by sufficient evidence that defendants had knowledge of the license restriction. See page 936 of 145 Fed. In this case the evidence is overwhelming that defendants did know of the license agreement when it made the infringing sale as Henry looked at and read it on the machine for use upon which he sold his ink. He also, as stated, requested a concealment of the fact that he was selling this ink for use on this machine. Ink for ordinary writing and printers ink for printing are sold generally to all who use ink in writing or printing, and may be what Judge Coxe refers to in Cortelyou v. Johnson, supra, as "staple articles of commerce" or public commodities required in the ordinary affairs of life. But the ink made and sold by defendants is neither made nor sold as a staple article of commerce or as a public commodity required in the ordinary affairs of life. It is made and sold for use on the patented machines referred to. True, the defendants put on their cans a notice

that same was not to be used on such machines, but that was done under advice, to mislead and deceive, and was a part of the plan to induce and procure a violation of the license restrictions by the licensees of complainants.

In a court of justice under this evidence, it has and should be given the same effect we would give a label on the back of a thief, caught in the act, reading, "I am not a thief, I must not and will not steal." Indeed, I cannot see, but for the opinion in Cortelyou v. Johnson, supra, that it is material whether or not the ink sold by defendants is a staple article of commerce or a public commodity used in the ordinary affairs of life. If the decisions referred to have any vitality—any solid basis on which to rest—it must be for the reason that the owner of a patent has the right to make and use the patented article or not use it as he pleases; to sell it, or license it, or its use, or to license it for a limited use as he sees fit. If he sells or licenses he may limit or restrict its use in any way he sees fit, however ridiculous such restriction may seem, so long as he violates no law in so doing, or commits no wrong, and imposes no obligation on another, his licensee, to violate a law or commit a wrong. Such is the doctrine of Bement v. Harrow Company, supra, enunciated by the Supreme Court of the United States. If this be so such restriction has nothing to do with trade or commerce. If the licensee did not have the machine, he would not need the ink or use it. If he takes and uses the machine under the license, he wants the ink, and, as the license agreement is valid and binding, and, under the authorities, makes him a licensee of the patentee, he is an infringer when he uses any other ink thereon or therewith in operating it. The owner of the patent may be extremely whimsical in imposing the license restriction, but that is of no concern to courts or to the public if no law is violated or wrong done, and the restriction be plain and undertsood by those who deal with the machine or its use. If the licensee is an infringer in so doing, then one who knowingly and designedly aids, abets, and incites him in so doing, and knowingly furnishes the means to accomplish the infringement, intending they shall be used for the purpose of infringing, is as much a wrongdoer as the licensee. In the case at bar, any person may purchase, use, make, or sell this ink, or any ink for all other uses and purposes, but not for the purpose of putting the licensed machine to an unlawful use, a use prohibited by the license. If this is not the law, then there is no such thing in patent law as contributory infringement.

In Walker on Patents (4th Ed.) § 407, the law is thus stated, and I think quite correctly, viz.:

"Sec. 407. Contributory infringement is intentional aid or co-operation in transactions, which collectively constitute complete infringement. For example; where a person furnishes one part of a patented combination, intending that it shall be assembled with the other parts thereof, and that the complete combination shall be used or sold, that person is liable to an action, as infringer of the patent on the complete combination. And where a person furnishes a machine which is useful only for the purpose of making a patented article, intending that it shall be thus used, that person is himself liable for any infringement which is afterward committed in the manufacture of that article with that machine. So, also, a person is chargeable with contributory infringement of a patent on a machine, where he furnishes

articles for that machine to operate upon, intending that the machine shall be used by operating on those articles. Furthermore, where a person furnishes a machine, composition of matter or other article, which is particularly adapted to be used in performing a patented process, and which the person furnishing the same intends shall be thus used, that person is liable as a contributory infringer for any infringement which afterward occurs in accordance with his intention. But where the machine or other property thus furnished is useful for some other purpose than to be a part of a patented combination, or to make a patented article, or to be operated upon by a patented machine, or to be used in performing a patented process, and where he who furnishes the property does not intend or know, when furnishing the same, that it is to be thus used, he incurs no liability to an action for infringement. But if he knew or intended that the property furnished by him was to be used in either of the infringing ways, he cannot defeat an action for infringement by showing that the furnished property could have been used in some noninfringing way."

The vice of the transaction is in becoming a party to the infringement by inciting, aiding and abetting it, not in the mere selling of something to a licensee which he may use in infringing the patent by violating the license.

In Imperial Chemical Mfg. Co. v. Stein et al. (C. C.) 69 Fed. 616, the patents were for a process for dyeing hair, viz.:

"(1) Coloring human hair or the hair or fur of animals by treating the said hair or fur first with an ammoniacal solution of nickel, and then with pyrogallic acid, substantially as hereinbefore described and set forth. (2) The dye bath, consisting of an ammoniacal solution of nickel and pyrogallic acid, substantially as described."

The court, Judge Townsend, now of the Circuit Court of Appeals, said:

"The patent states, as an essential element of the patented process, that the liquids used therein shall be successively applied in a given manner. The defendants have sold a hair dye put up in three separate bottles, one containing sulphate or nitrate of nickel, one a solution of pyrogallic acid in water, and one a solution of nitrate of silver. The circular accompanying said bottles shows that defendants apply said dye in the manner specified in the patent, and sell it to others to be so applied. Such sales constitute contributory infringement. Chemical Works v. Hecker, 2 Ban. & A. 351, Fed. Cas. No. 12,133; Boyd v. Cherry (C. C.) 50 Fed. 279."

It is common knowledge that such articles are common articles of commerce, and sold generally by druggists for many different uses and purposes, and that they are used for other purposes than the dyeing of hair. The vice of the transaction in that case was that defendants applied the substances in violation of the patented process and sold same to others to be so applied. But it is insisted that complainants procured the alleged infringement, and cannot be heard to complain and that they suffered no actual damage. The answer is, first, that the complainants did not procure the infringement. They had the right to have a licensee afford the suspected infringer an opportunity to infringe and allow him to do so if he chose, and, second, if infringement is proved, the amount of damage is immaterial. This action is maintainable, if maintainable at all, as one in equity for an injunction because of the infringement, and not because of the amount of damages sustained. As was said by Judge Lacombe, in Chicago P. T. Co. v. Philadelphia P. T. Co. (C. C.) 118 Fed. 852:

"There is no force in the suggestion that the sale was made to a purchaser who bought in the interest of complainants, in order to secure proof of infringement. We are not now dealing with any question of damages, but with the mere fact of sale of a device made in conformity to the patent. The sale of such a device is an act of infringement, although it may be made under such circumstances that complainants cannot recover damages for it."

In Badische Anilin v. Klipstein (C. C.) 125 Fed. 556, it is said:

"Defendants further contend that the sales were not infringements of which a court of equity should take notice, because, being made to its agents, it was as though Badische Anilin had bought the cans; that the dye-stuff was not sold to a person who intended to dye with it; and that sales to a patentee are licensed sales. A similar objection was overruled by this court, in Chicago Pneumatic Co. v. Phila. Tool Co. (C. C.) 118 Fed. 852, where it was held that, although a complainant might not be able to recover damages or profits for such a sale, it was nevertheless an infringement, entitling complainant to injunctive relief."

See, also, Lever Bros. v. Pasfield (C. C.) 88 Fed. 485; Samuel Bros. & Co. v. Hostetter Co., 118 Fed. 258, 55 C. C. A. 111; People v. Mills, 178 N. Y. 274, 70 N. E. 786, 67 L. R. A. 131.

Damages for an infringement are recoverable in an action at law, and equity will not take cognizance for the purpose of giving damages or awarding an accounting. The accounting is an incident to the injunctive relief and given to avoid the necessity for an action at law. Hence, when the patent has expired, equity will not take hold of the case even where there have been hundreds of infringing acts and thousands of dollars of damage sustained. In such case, as there is no use for an injunction, the remedy at law is adequate and complete.

The complainants have made a case by a preponderance of credible evidence. I am satisfied the defendants have intentionally infringed, and are prepared to continue the wrong and intend so to do.

There will be a decree for the complainants.