### CONCRETE MIXING & CONVEYING CO. v. POWERS–KENNEDY CONTRACTING CORPORATION et al.

Circuit Court of Appeals, Second Circuit. July 17, 1928.

No. 131.

1. Patents ⬤⟿20—Physical change in apparatus need be very little, to sustain patent to do thing never before done.

Physical change in existing apparatus need be very little, to sustain a patent putting into effect a new and inventive idea to do a thing which has not been done before.

2. Patents ⬤⟿327(1)—Circuit Court of Appeals must follow its former ruling respecting validity of patent in subsequent case, unless new evidence raises questions not previously considered.

Whatever the Circuit Court of Appeals may think of correctness of its former ruling respecting validity of a patent, it must follow such rul-

ing in a subsequent case involving other parties, unless new evidence raises questions not previously considered.

3. **Patents ⊕⟹54—Prior casual and abandoned uses do not constitute "anticipation," for purpose of invalidating subsequent patent.**

Prior casual and abandoned uses do not constitute "anticipation," for purpose of invalidating a subsequent patent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

4. **Patents ⊕⟹328—1,127,660, claims 2, 4, 6, 17, 21, 22, 28, 34, and 35, covering method and apparatus for transporting concrete through pipe by pneumatic pressure, held valid and infringed.**

McMichael patent, No. 1,127,660, claims 2, 4, 6, 17, 21, 22, 28, 34, and 35, covering method and apparatus for treating and transporting concrete through a pipe by pneumatic pressure, *held* valid and infringed.

Manton, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Concrete Mixing & Conveying Company against the Powers-Kennedy Contracting Corporation and another for infringement of claims Nos. 2, 4, 6, 17, 21, 22, 28, 34, and 35 of McMichael patent, No. 1,-127,660, granted February 9, 1915, for "methods of an apparatus for transporting and treating concrete." Defendant corporation was builder of the Queensboro Crosstown subway in Forty-Second street, New York City, and used in this work a machine for conveying and placing concrete by compressed air, which is alleged to infringe the patent in suit. The individual defendant furnished the machine to the corporation. Decree for complainant, and defendants appeal. Affirmed.

John D. Morgan, of New York City (Alan M. Johnson, of New York City, of counsel), for appellants.

Stephen J. Cox, of New York City (Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. These same claims were held valid and infringed by the same District Judge in Concrete Mixing & Conveying Co. v. Ulen Contracting Corp., 12 F.(2d) 929. We affirmed that decree without opinion. 12 F.(2d) 931. A detailed description of the patent in suit need not be here re-peated. Subsequently Judge Bourquin held the patent invalid in Concrete Mixing & Conveying Co. v. R. C. Storrie & Co. (D. C.) 23 F.(2d) 131. It is urged that, because of his decision and the case of Concrete Appliance Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 222, as well as because of new matter introduced in this record, we should reconsider the validity of the patent.

The new matter is, of course, open to us and will be dealt with hereafter. The Supreme Court case, however, contains nothing, in our opinion, which casts doubt upon the correctness of the Ulen decision; in fact, it was before us when that decision was made. It holds, affirming the judgment of the Circuit Court of Appeals for the Third Circuit in 291 F. 486, that the Callahan patent, which covered an apparatus operating on the gravity principle for distributing "wet" concrete, was invalid, because it merely made use of known methods and appliances for the convenient handling of this recently accepted building material. The appellants' argument runs that, since the Supreme Court emphasizes that old apparatus used for distributing water, grain, or coal was readily adaptable for handling concrete, so the prior art patents for blowing sand, grain, or grout, which in the Ulen Case were held not to invalidate McMichael's patent, should now be deemed complete anticipations of it. But the Gomery decision does not rest merely on the assumption that apparatus for coal and grain could have been used for wet concrete without inventive thought. Adaptations of old carriers to handle concrete were shown to have been frequently made for several years before the application for the patent there in suit. The idea was already of common knowledge and was being applied generally. Therefore Callahan's adaptation was not an invention.

[1] But that is a very different situation from the one before us in the Ulen Case, where nobody before McMichael had ever used a pneumatic apparatus to transport concrete. The Warren and Farnham sand-blast machines (patents No. 671,303 and No. 747,-396) could not have been so used without increasing the size of the discharge pipes and cutting off the sand-blast nozzles. To do this was to make a new machine, and one who thought of doing it would have had a new and inventive idea; that is, that of blowing concrete, which had not been done before. When that is so, the physical change in the apparatus need be very little to sustain a patent. The only reason why a new use is not patentable is that the law grants patents only

for new things, not for new ideas. Similarly Goldie's machine (patent No. 707,840) for blowing cement could not, so far as appears, have been used as it stood for concrete, and never was so used. The Supreme Court case does not require us to reconsider the validity of McMichael's patent.

[2] In the suit against Storrie & Co., Judge Bourquin seems to have relied to some extent, at least, upon patents which were not in the record in the Ulen Case and are not now before us. But whatever the court as now constituted might think of the correctness of our former ruling, it is our duty to follow it, unless new evidence raises questions of the patent's validity not previously considered. See Cortelyou v. Charles E. Johnson & Co., 145 F. 933, 934 (C. C. A. 2); Crier v. Innes, 170 F. 324 (C. C. A. 2).

The new evidence of the patent art upon which appellants rely to distinguish the Ulen decision includes two patents granted in 1872 to W. H. Smith. No. 122,497 is for an improvement in concrete pavements and claims concrete "prepared for use in a liquid or semiliquid condition, capable of flowing in pipes and running into molds." No. 122,498 discloses a machine for mixing liquid concrete and conveying it by a discharge pipe from the mixer to the spot where it is to be laid. The concrete is to flow through the discharge pipe by gravity, or, as an alternative, after flowing by gravity through a small winding passage into a chamber, $F$, is to be forced into the discharge pipe by the pressure of steam or compressed air admitted into the chamber above the mass of the concrete. The chamber has a flat bottom of large area relative to the size of the discharge pipe, the outlet of which opens into the center of the bottom. While this machine discloses the idea of forcing concrete through a pipe by compressed air, whether it was practically operable may well be doubted. It would seem that a large quantity of the concrete, or at least the stones of which it is partly composed, would necessarily accumulate upon the flat bottom of the chamber. In any event, it was very different from McMichael's device, which injects air into the concrete at its entrance into the discharge outlet. It cannot be regarded as an anticipation.

Nor can the argument that the patent in suit is limited to "dry" concrete, as distinguished from defendants' "wet" concrete, prevail. It declares on page 3, line 55: "It is equally well adapted for the treating and handling of a mass containing a considerable excess of water, in case such an excess is for any reason found desirable." The other new

references in the Patent Office (Canniff, McIlvrid, Beach, and Davidson) we regard as less persuasive than those which were passed upon in the Ulen Case.

[3, 4] The new defense of prior use was held by the District Court not sufficiently proved, and with this we agree. This use was of a machine which Artingstall and Fanning said that they saw laying a concrete floor in 1903, subsequently changing the date to 1904. That was 22 years before they gave their testimony, and there was no documentary corroboration of any kind. It is true that in 1918 Artingstall described very generally before a meeting of engineers that this process was practiced in 1903, but that cannot be deemed documentary corroboration. Fanning says the machine was also used in one section of a tunnel in Chicago in 1903, and was apparently abandoned as too expensive. It is one thing to say that a continuous use to date may be found on oral testimony to have started at a given time, and quite another to say that such testimony is enough when it describes only a casual use, abandoned thereafter, and never entering into the art until after the patent in suit was applied for, an interval of nearly 3 years. Such casual and abandoned uses do not contribute to the stock of knowledge which makes up the art. If we may invalidate a patent upon such prior uses, so proved, no patent would be safe. A prior use, such as constitutes an anticipation, was not proven with the degree of certainty which the courts require. See Deering v. Winona Harvester Works, 155 U. S. 286, 300, 15 S. Ct. 118, 39 L. Ed. 153; Internat. Cork Co. v. New Process Cork Co., 6 F.(2d) 420, 424 (C. C. A. 2); De Laski & Thropp Co. v. Fisk Rubber Co., 203 F. 986 (C. C. A. 1).

Much argument has been expended in an effort to establish just how the plaintiff's and defendants' machines operate in sending the concrete through the discharge pipe—the plaintiff contending that both discharge it in a succession of slugs or pistons, while the defendants claim that both, or at least theirs, operate kinetically and float the materials in the air, just as sand or grain is carried in floatation. To us the dispute seems irrelevant. The patent says nothing which commits the patentee to the slug method of operation. The theory is built upon the use of the phrase "submasses," as in lines 72 and 89, page 2, where it is said that the lower air jet "engages with the submasses to push them along." But this cannot mean solid "slugs," for on the same page, lines 92–99, the effect is said to be thoroughly to commingle all the

ingredients and insure a better mix. Again, at line 113, page 3: "The delivery pipe itself becomes a mixing chamber, wherein pneumatic mixing is effected or continued." And see, also, line 86, page 3. Such statements necessarily forbid the notion of solid slugs. All that is meant by "submasses" is the portions that descend into the discharge pipe, *14*, and by their descent are separated from the general mass in the main chamber *1*. It is a synonym for "portions of the mass as they move toward and into the discharge duct." Line 53, page 2.

Moreover, several of the claims in suit are for the apparatus, or machine, and if they are infringed it is enough for the purposes of this suit, whether the machine discharges its concrete kinetically or in successive slugs. Neither theory is entirely persuasive. Artingstall's opinion that the inner portion would be blown ahead of that at the circumference of the pipe, which would be retarded by friction, seems sensible. On the other hand, it is difficult to believe that particles of the mixture, including stones of an inch and half in diameter, are floated independently in the air, as sand or grain is blown. Ray's testimony regarding the stones effectively disposes of that possibility under any such pressures as are used. It would seem to us that the mass as a whole must block the passage of air, forming an obstruction which yields at different points, because of its uneven power of resistance, and that the heavier stones must be carried by the impact and momentum and cohesion of the lighter substances, the whole mass going forward in a constantly agitated mixed stream, just as McMichael describes. But whether the concrete goes forward as we imagine, or in some other manner, there is no sufficient reason to suppose that defendants' machine does not operate in the same manner as plaintiff's, whatever that manner may be. The District Court on conflicting evidence found infringement of the method claims (4 and 6), as well as of the apparatus claims. We are not convinced that this finding was wrong.

Apparently the "slug" theory was brought into the argument because it was thought necessary to distinguish in this way from Farnham, Warren, and Goldie. We have already suggested that those machines would require modifications to operate with concrete containing stones an inch and a half in diameter. Whether this was the ground adopted to distinguish them in the Ulen Case, or whether the court as then constituted accepted the slug theory, does not appear, and is not important. On some ground we distinguished the prior art, and sustained the validity of the patent, and that ruling we should follow, until its error is pointed out by higher authority.

It is urged that the defendants' structure and operation are different, in that (1) they do not use "dry," air-impervious concrete; (2) they do not put compressed air pressure behind the concrete mass; (3) they do not use a second compressed air stream at the bottom of the chamber, to break the dry concrete into slugs; and (4) they do not push the concrete through the delivery pipe in "slugs" by air pressure from behind.

We have already alluded to a portion of the specifications which indicates that the patent is not limited to "dry" concrete. It is true that the defendants' machine in its present form, whether or not this was so when the suit was started, is operated without an air inlet into the discharge chamber above the mass of concrete. But it is admitted by defendants' witnesses that, as soon as air is injected into the discharge pipe, it is forced through the concrete and establishes a pressure in the chamber above. Mr. Ray, plaintiff's expert, testified that, because of this, the operation without the top air inlet is identically the same for all practical purposes as with the top inlet. While the claims which specify an upper air inlet (e. g., claims 2, 17, 34, and 35) might not be infringed by a machine which omits it, the other claims in suit make no reference to the upper air inlet. We think there is clearly infringement of claims 4, 6, 21, 22, and 28. The final decree appealed from awards money damages, and is sustainable on the infringement of these claims, even though other claims in suit were not infringed by the machine used by defendants at the time of the trial.

The decree is accordingly affirmed.

MANTON, Circuit Judge, dissents.