CORTELYOU *v.* CHARLES ENEU JOHNSON & COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 32.　Argued October 31, November 1, 1907.—Decided December 2, 1907.

In this case this court follows the unanimous opinion of the Circuit Court of Appeals that defendant did not have sufficient notice of the license restriction to be charged with contributory infringment, even if that doctrine exists, for selling ink to the vendee of a patented printing machine, sold under a license restriction that it should be used only with ink made by the patentee.

Where none of the executive officers of a manufacturing corporation knew of the license restriction under which a patented machine was sold, notice to a salesman, who was not an officer or general agent of the corporation, was held insufficient to charge the corporation with notice as to future sales of the article manufactured by it to the licensee and used by the latter in violation of the license restriction.

142 Fed. Rep. 933, affirmed.

THE facts are stated in the opinion.

*Mr. Edmund Wetmore* and *Mr. Samuel Owen Edmonds* for petitioners:

Defendant had notice of the license restriction imposed upon the use of other inks than that manufactured by complainants.

In order to secure the proof of the acts complained of, there was nothing for complainants to do save what they had done in every one of the preceding cases, and that was to afford the defendant an opportunity to corrupt a licensee, and if it took advantage of such opportunity, to make the transaction the basis of suit. And this is what the complainants did. In doing so, they followed a course which has not only been followed by others for many years but which has also been expressly approved by the courts, who had in mind the difficulties confronting a complainant as above suggested and the necessity for obtaining strict proof of an infringing transaction as the basis of suit or motion for preliminary injunction. *Chicago Pneumatic Tool Co.* v. *Philadelphia Pneumatic Tool Co.*, 118 Fed. Rep. 852; *Badische Anilin* v. *Klipstein*, 125 Fed. Rep. 556; *Lever Bros.* v. *Pasfield*, 88 Fed. Rep. 485; *Samuel Bros. & Co.* v. *Hostetter*, 118 Fed. Rep. 258; *Knowles* v. *Peck*, 42 Connecticut, 386, 395; *Dick* v. *Henry*, 149 Fed. Rep. 429; *Tompkins* v. *Mattress Co.*, 154 Fed. Rep. 670.

The question of notice to the defendant sifts down, in the last analysis, to the inquiry as to whether or not, under the proofs before the court, the defendant sold its ink with guilty intent, *i. e.* with intent that it be unlawfully used upon the licensed machines in question. Under such circumstances defendant need not even be shown to have actually made such a sale. The intent to do so is what governs. *German Filter Co.* v. *Loew Co.*, 103 Fed. Rep. 306, aff'd., 107 Fed. Rep. 950; *Stearns* v. *Phillips*, 43 Fed. Rep. 795; *Thomson Co.* v. *Ohio Co.*, 80 Fed. Rep. 723; *Rupp* v. *Elliott*, 131 Fed. Rep. 732; *Canada* v. *Michigan Co.*, 124 Fed. Rep. 489; *Button Fastener Case*, 77 Fed. Rep. 297; *Goodyear Co.* v. *Jackson*, 112 Fed. Rep. 148; *Tubular Co.* v. *O'Brien*, 93 Fed. Rep. 201; *Celluloid Co.* v. *Zylonite Co.*, 30 Fed. Rep. 440; *Thomson Co.* v. *Kelsey Co.*, 72 Fed. Rep. 1017; *Wil-*

lis v. *McCullen*, 29 Fed. Rep. 641; *Schneider* v. *Pountney*, 21 Fed. Rep. 399; *Cutter Co.* v. *Union Co.*, 147 Fed. Rep. 275; *New York Co.* v. *Jackson*, 91 Fed. Rep. 426; *Coolidge* v. *Mc-Coue*, 1 B. & A. 83.

This guilty intent may be proved in various ways. Where the article complained of is incapable of other (and lawful) use, such intent flows as a necessary inference from its sale or offer for sale. Solicitation of purchasers by advertisements, circulars, etc., is another form of adequate proof of such intent. *Willis* v. *McCullen*, 29 Fed. Rep. 641; *Municipal Co.* v. *National Co.*, 107 Fed. Rep. 289. In such cases the unlawful intent is presumed, the presumption being based upon the defendant's wrongful assertion of the right to make the sales complained of, combined with the belief that, unless restrained, such sales will in fact be made.

Defendant, in its answer, insists upon its right to sell its ink to complainants' licensees, asserting the licenses to be illegal, unenforceable and contrary to public policy. It is obviously to establish this right, and to be permitted to continue its sales to licensees, that it has defended and is defending this suit.

*Mr. Francis T. Chambers*, for respondent.

Mr. JUSTICE BREWER delivered the opinion of the court.

This is a suit to restrain an alleged infringement of a patent granted June 22, 1897, for the stencil duplicating machine known as the rotary Neostyle. The plaintiffs below, petitioners here, represent the entire interest in the patent. There is no claim of any infringement by using or selling the patented machines, but of an indirect infringement in the following manner: For the last few years the rotary Neostyle has been sold subject to this license, which was plainly disclosed on the baseboard of the machine: "License agreement. This machine is sold by the Neostyle Company with the license restriction that it can be used only with stencil paper, ink and other supplies made by the Neostyle Company, New York city."

The defendant company (which is engaged in the manufacture and sale of ink) is, it is contended, engaged in selling ink to the purchasers of these machines for use thereon; that it is thus inducing a breach of the license contracts and is responsible as indirectly infringing the patent rights of plaintiffs. The Circuit Court sustained the contention and entered an interlocutory decree for an injunction and an accounting: 138 Fed. Rep. 110. On appeal the Circuit Court of Appeals for the Second Circuit reversed this decree and remanded the case to the Circuit Court, with instructions to dismiss the bill (145 Fed. Rep. 933; 76 C. C. A. 455), whereupon the case was brought here on certiorari.

The three judges of the Circuit Court of Appeals concurred in reversing the decree of the Circuit Court on the ground that the evidence was not sufficient to show that the defendant had notice that the machines for which the ink was ordered had been sold under any restrictions, but they differed upon the question whether there was any liability in case sufficient notice of the license agreement had been brought home to the defendant. The majority were of the opinion that the doctrine of contributory infringement, which they conceded to exist, should not be extended beyond those articles which are either parts of a patented combination or device, or which are produced for the sole purpose of being so used, and should not be applied to the staple articles of commerce. In that view of the case the article supplied being ink, a thing of common use, its sale to a purchaser of the Neostyle machine would be no infringement.

While in *Bement* v. *National Harrow Company*, 186 U. S. 70, this court held, in respect to patent rights, that with few exceptions "any conditions which are not in their very nature illegal with regard to this kind of property, imposed by the patentee and agreed to by the licensee for the right to manufacture or use or sell the article, will be upheld by the courts," it is unnecessary to consider how far a stipulation in a contract between the owner of a patent right and the purchaser from him of a machine manufactured under that right, that it should

be used only in a certain way, will sustain an action in favor of the vendor against the purchaser in case of a breach of that stipulation. So, although "if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer," *Angle* v. *Chicago, St. Paul &c. Railway,* 151 U. S. 1, 13, it is also unnecessary to determine whether this states the full measure of liability resting upon a party interfering and inducing the breaking of a contract, for we concur in the views expressed by all the judges of the Court of Appeals that there is no sufficient evidence of notice. True, the defendant filled a few orders for ink to be used on a rotary Neostyle, but it does not appear that it ever solicited an order for ink to be so used, that it was ever notified by the plaintiffs of the rights which they claimed, or that anything which it did was considered by them an infringement upon those rights. Further, none of the chief executive officers of the company had knowledge of the special character of the rotary Neostyle machine or the restrictions on the purchase of supplies. The case of the plaintiffs in this respect rests mainly on the testimony of the witness, Gerber, who testified that at the instance of the manager of the Neostyle Company he wrote to the defendant for a one-pound can of black ink for use on the rotary Neostyle, saying, "I will be at my office Friday afternoon, between 1:30 and 3:30, and if convenient have your representative call at that time." A salesman of the defendant, named Randall, did call. The witness directed Randall's attention to the restrictions on the single machine he had in his office, and asked if he would have any trouble with the Neostyle Company if he used the defendant's ink. Randall replied in the negative, and added that "the ink in question was not patented, that anybody could make or use it; that no trouble would come to me from the use of the ink which he sold." The restriction on the machine shown to Randall was one formerly used by plaintiffs, but which had been discarded prior to this transaction and for it the present license agreement

had been substituted. The restriction shown to Randall stated that the machine was sold "with the express understanding that it is licensed to be used only with stencil paper and ink (both of which are patented) made by the Neostyle Company of New York city." Evidently from his reply Randall's attention was drawn to the question of a patent on the ink. Further he was not an officer or general agent of the defendant company, but simply a salesman and it cannot be that this talk with him is notice to and binding on his principal in respect to all future transactions.

After reviewing all the minor considerations to which our attention has been called by the plaintiffs, we see no sufficient reason for disagreeing with the unanimous opinion of the Circuit Court of Appeals in respect to the matter of notice, and its decree is

*Affirmed.*