CROWN CORK & SEAL CO. OF BALTIMORE CITY v. BROOKLYN
BOTTLE STOPPER CO. et al.

(Circuit Court, E. D. New York.   July 15, 1909.)

1. PATENTS (§ 256*)—INFRINGEMENT—MACHINES SOLD UNDER LICENSE CON-
   TRACTS—VIOLATION OF CONDITIONS.
      A manufacturer of patented machines for applying a special pattern of
   seal or cork to bottles may lawfully sell such machines under license con-
   tracts binding the purchasers to use the same only in connection with
   seals or corks made by the seller, and a violation of such contract by a
   purchaser or by a secondhand purchaser having knowledge of such restric-
   tion will constitute an infringement of the patent.
      [Ed. Note.—For other cases, see Patents, Dec. Dig. § 256.*]

2. PATENTS (§ 259*)—CONTRIBUTORY INFRINGEMENT.
      Complainant made machines for applying a special form of seal or cork
   to bottles, protected by patents, which it sold only under license con-
   tracts providing that they should be used only with seals or corks made
   by complainant, which were not protected by patent.  Its machines were
   practically the only ones in use in this country.  Defendants, with knowl-
   edge of such facts, made a similar seal, which could be used on complain-
   ant's machines, and sold the same to all whom they could induce to buy;
   the result being that they were chiefly bought for use and used on com-
   plainant's machines.  *Held*, that defendants were chargeable with contribu-
   tory infringement of complainant's patents, and would be enjoined from
   selling their product to any purchaser who was bound by the restrictions
   of complainant's license contracts.
      [Ed. Note.—For other cases, see Patents, Cent. Dig. § 401;  Dec. Dig. §
   259.*

      Contributory infringement of patents, see notes to Edison Electric Light
   Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485;  Æolian Co.
   v. Harry H. Juelg Co., 86 C. C. A. 206.]

3. PATENTS (§ 290*)—SUIT FOR INFRINGEMENT—PARTIES LIABLE.
      Individuals, who organized a corporation with a small capital for the
   sole purpose of enabling them as individuals to make and sell an infring-
   ing article through the corporation without being subject to personal lia-
   bility, may be joined with the corporation as defendants in a suit for the
   infringement and held jointly liable therefor.
      [Ed. Note.—For other cases, see Patents, Dec. Dig. § 290.*]

In Equity.  On final hearing.

Philipp, Sawyer, Rice & Kennedy (Edwin G. Baetjer, Robert H.
Parkinson, and James Q. Rice, of counsel), for complainant.
Louis C. Raegener (S. L. Moody, of counsel), for defendants.

CHATFIELD, District Judge.  The present action involves primari-
ly an issue of fact with relation to the knowledge, and necessarily
resultant intent, with which the defendants attempted to make, and
made, sales of caps for use as corks, upon bottles containing liquids
which require hermetical sealing.

The particular form of the cap in question is that of a tin disk, with
the edge so bent over and crimped as to form a shallow metallic flange,
capable of compression over an annular shoulder upon the lip of the
bottle to be closed, and with a thin packing or disk of cork inside of
the cap, to insure perfect sealing, when applied by an appropriate

machine, adapted to compress the crimped flange and the cork disk upon the neck and opening of the bottle. This method of sealing and form of cork is a comparatively recent adaptation, and the patent under which the business has grown up was issued, upon the 26th day of April, 1892, No. 473,776, to William Painter, of Baltimore, Md., who in turn assigned his patent to the complainant.

The testimony shows that at the present time some 85 per cent. of the bottling business of the United States is using this form of seal, and the figures given in the testimony, as to the number of seals sold and used each year, are enormous. The complainant corporation was organized under the laws of the state of Maryland, has built up a large and profitable business in supplying these caps, known as "Crown corks," has built machines under patents making use of the method above referred to, for applying the corks in question, and has sold its machines under a license, by the terms of which the purchasers agreed to buy their corks from the complainant corporation alone.

At various times litigation with relation to the form of the cork has been had, with a result that the cork itself has been held open and free from patent rights (Crown Cork & Seal Co. v. Standard Stopper Co., 136 Fed. 841, 69 C. C. A. 200 [Second Circuit]) ; and the complainant, inasmuch as it was unable to prevent the manufacture and sale of such corks, has endeavored to derive a profit from its ownership of the method patent, and from the manufacture and sale of the patented machines for the use of this method, by an attempt to restrict all persons to the purchase of its own seals or corks, by means of the license agreement above referred to. The present action necessarily involves a consideration of the scope of the complainant's rights in attempting to restrict the use of the machines and the method above referred to, by means of the licenses required, and a determination as to whether the laws of the United States with respect to patents allow the enforcement of the patent by injunction and awarding of damages, for the use of such articles as these Crown caps, in violation of such a license; that is, whether such a use would be an infringement of any of the patents involved. Another question that must be considered is whether unconscious or unwitting use of such caps, by a party obtaining possession of one of the machines in question by sale or any other manner of acquisition, can be the subject of injunction, in the absence of any license agreement with the party making such use; but apart from these questions, and perhaps independent of them, is the issue of contributory infringement, involving the issue of fact spoken of at the outset of this opinion.

The complainant corporation obtained, by assignments duly filed, and upon which the patent was granted to the complainant as assignee, the rights to a machine operated by power, for doing the work described in the patent of April 26, 1892, and this later patent was issued December 5, 1899, under No. 638,354, upon the application of William Painter, as an assignor to the Crown Cork & Seal Company of Baltimore, Md. This patent provided for the automatic application of seals to the bottles, by a movement of the bottle supports, and the automatic feeding of the caps to these bottles; the machine, as has been said, being operated by power. Upon the 20th day of February, 1900,

another patent, under No. 643,973, was issued to the Crown Cork & Seal Company, as assignee of William Painter and John T. Hawkins, inventors, to cover a mechanism designed to be an improvement over the feeding mechanism of the patent last mentioned, and substantially provides for a hopper or feeding-chute, to direct the crowns to the sealing mechanism, and an independent rotating device, adapted to receive the crowns and direct them to the chute.

The present action was instituted by the filing of a bill of complaint, in the month of September, 1907, and it must be noted that patent No. 473,776, issued on April 26, 1892, has expired since the beginning of the action, and soon after the final submission of the case. The complainant alleges that the defendant corporation was organized by the three individual defendants, for the purpose of evading liability for what are charged to be infringing acts and operations, both on the part of the corporation and of the individual defendants; it being charged that the corporation has insufficient financial responsibility to answer the damage which it is alleged to have caused, and that it is managed and controlled by these defendants substantially as a cloak for their personal acts. The extent of these infringing operations is stated to be considerable, and to have caused much damage to the rights of the complainant; and the defendants are charged with knowledge, not only of the complainant's patents and its business, but of the extent thereof, and the system of licenses alleged, as has been said, to be intended to cover, and to actually include, substantially all of the operations of the parties in the United States, making use of the method of sealing bottles by means of such corks or stoppers as those hereinbefore described.

The testimony shows without dispute that the corks or seals manufactured and sold by the defendants are substantially identical in appearance with those of the complainant, and that no one but an experienced and expert mechanic can distinguish between them. The testimony further shows that the defendants' stoppers can be used and applied by the machines of the complainant, and practically all of the witnesses who have been shown by the testimony to be customers of the defendant have used or are using machines originally manufactured by the complainant, and, when sold, delivered subject to the signing of a license in the form required by the complainant at the time. Many of the machines have come into the hands of persons now using them by the sale of business or plant, and even, in some instances, the sale of an individual machine. The complainant has been, according to the testimony, alert in following up such sales, as soon as information has been gained, and suits instituted or new licenses obtained from these purchasers.

The defendants furnished evidence as to some 93 customers, of whom 80 have been shown to be licensees of the complainant, and of some 20 witnesses, who are using cap machines without a license; but, of these 20, 18 are shown to have machines previously licensed to other parties, and obtained in some manner from these other parties. One machine was not identified, and the original license, if it existed, could not be traced. With reference to the other, no license was

signed; but the purchaser was informed by the salesman of the terms under which the machine was sold, and placed his order with that knowledge. The defendants also produced three dealers, who testified to having bought machines at various times from different concerns, which, with two exceptions, were shown to have originally had licenses from the complainant.

A hand machine, built under a patent to one Fox, No. 702,716, June 17, 1902, shown by the testimony to be used in at least four places by saloon keepers who bottle their own material to be sold over the counter, seems to be capable of applying Crown corks; but it is claimed by the complainants that Fox's machine is an infringement of patent No. 473,776, and its use is not shown to have been extensive enough to seriously affect the issues in this case.

Another concern, the Crown Cap & Machine Company of New Jersey, which acquired the plant of the Eastern Cork Company, is testified by one of the witnesses to have made 50 machines, and the Eastern Cork Company to have made 100 machines, under the Beyer patent, No. 850,288, similar in purpose to the machines of the complainant; but the only sales actually traced in the testimony were testified by other witnesses to be a presentation to Katz Bros. Brewery, and that the machines did not prove satisfactory and were not used.

Certain other machines manufactured by the Standard Stopper Company, used a substantially different cap; but the use of these machines has been discontinued, and it would seem that if the defendants relied upon an impression that their customers, represented by these various witnesses, were not using the complainant's machines, and were not subject to the operations of the license, then their reliance has proven unfounded, and such sales can only be justified, if at all, upon the broad questions which must be considered hereafter.

The result of the testimony leads to the conclusion: That the complainant controls substantially the entire output of machines capable of using seals or corks of the description involved, and also supplies almost entirely the seals or corks themselves for use upon these machines; that the system of licensing has been consistently followed out; that no laches or acquiescence, of such extent as to work an estoppel, has been shown in following up any exception to the universality of this license system; and that the complainant by its methods of sale, its acts in dealing with sold or assigned machines, and in prosecuting all parties who do not comply with its license system, or who may seem to infringe its patents, has done all that could be expected of it, and has shown a state of facts upon which the defendants did not have the right to sell to or invite the purchase of their own caps, by any one who was not affirmatively known to them to be using a machine and method which did not infringe the complainant's patents, or, if they did make such sales, that it was at their peril if the sales proved infringements.

This determination brings us to a consideration of just what rights the complainant has under its licenses, and as to what would constitute contributory infringement.

It is claimed by the defendants that under the decision of Cortelyou v. Charles E. Johnson & Co., 207 U. S. 196, 28 Sup. Ct. 105, 52 L.

Ed. 167, and 145 Fed. 933, 76 C. C. A. 455, reversing (C. C.) 138 Fed. 110, such materials as these caps cannot be the subject of a license in connection with their use upon patented machines. In the recent case of A. B. Dick Co. v. Milwaukee Office Specialty Co. (C. C.) 168 Fed. 930, the Circuit Court for the Eastern District of Wisconsin, following the opinion in the case of A. B. Dick Co. v. Henry (C. C.) 149 Fed. 424, upholds the doctrine of contributory infringement set forth by Judge Ray in the latter case, and says that such is the settled law of the Circuit Court of Appeals of the Seventh Circuit; while in the still more recent case of A. B. Dick Co. v. Henry, upon appeal from Judge Ray's decision, the Circuit Court of Appeals in the Second Circuit, upon the 16th day of March, 1909, certified to the Supreme Court the direct question whether the acts of the defendants constituted contributory infringement of the complainant's patents. Until the determination of the question by the Supreme Court of the United States, it would seem to be established law that the right to restrict the use of such articles as the caps involved in this suit can be made the subject of a license in connection with the possession of patent rights upon the machine upon which the articles are used, and these caps do not seem to be of the nature of the "ordinary commodities of life" referred to by the Circuit Court of Appeals in the case of Cortelyou v. Charles E. Johnson & Co., supra.

If the patent upon the form of cap had been held valid, the complainant's right to that cap would have made the entire question one of infringement, no system of licenses would have been necessary, and, of course, no question of contributory infringement, through inducements to cause violation of the license rights, would have arisen; but, inasmuch as the patent on the cap was held invalid, the only way open to the complainant to obtain a profit from the extensive use of its machines, after the sale of the machines themselves, was to establish a system of licenses, by which the monopoly granted through the patents to the machines could be extended and made profitable, by requiring the purchase of the caps to be used, from the complainant company, in connection with the patented machine.

It is claimed by the defendants that the right to make and sell these caps has been secured to them by the decision in the suit based upon the cap patent, and that, having the right to sell such a product, the doctrine of license (by which the use of a patented article may be secured in its full enjoyment to the holder of the patent), cannot be so extended as to effect the same results which would have followed if the patent upon the caps had been held valid. It is contended that the doctrine of license should be limited to use of the patented article or machine, and cover thereby only such products as are necessarily employed, and are peculiarly fitted, as elements of a combination, to the operation of the machine itself, in performing functions, or carrying out the method, covered by the patent.

As has been said, this particular question is now before the Supreme Court of the United States; but up to the present time the doctrine of license has been treated broadly enough to justify such a contract in the form of a license as that exacted by the complainant from the purchasers of its machines, and it may be made the basis of the collec-

tion of a royalty upon the use of that machine, in the form of an agreement to secure to the patentee profits from such use, through the sale of the particular supply needed for the operation of the patented machine itself.

It may be assumed that there can be no contributory infringement, even where such acts complained of are knowingly committed, unless the use itself would constitute infringement on the part of those whose operations are contributed to by the defendants; but, having reached the conclusion that such use of a patented machine as that involved in this action could be made the basis of a license for the supplying of caps for the operation of these machines, we must pass to a consideration of whether the licensees and purchasers of secondhand machines from these licensees could be charged with infringement of the machine patents, by using those machines with caps purchased in violation of or without consideration of the license under which the machine was originally sold.

It is clearly established that the purchaser of a patented machine, where no title has been reserved or license for limited use required, is entitled to a free and full use of that machine, including the right to sell it to other parties, and that such use by the original purchaser or his vendees cannot be infringement. Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 77 Fed. 288, 25 C. C. A. 267, 35 L. R. A. 728, and cases therein cited. It would seem to follow that a machine may be sold absolutely, so far as title to the machine is concerned, but subject to a license as to its use, and that infringement of the patent may result from a violation of the license, although this is independent of the right to use or sell the machine, when full observance of the conditions of the license is respected by the licensee or his assigns. It must also follow that a violation of the license can be made the basis of a suit for damage; but, where the license covers the right to enjoy the benefits of the patent, that a suit for infringement will lie, when such a license is violated, either knowingly or unintentionally, if the violation of the license is sufficient to constitute such infringement. Further, if the machines sold under license contain a plate or notice of the condition or existence of the license, then a purchaser of the machine cannot disregard the license merely because he was not the original party thereto. In other words, such a license, in connection with a patented article, runs with the machine as a part of the monopoly granted by the patent. Such monopoly is not a violation of the interstate commerce or anti-trust laws. Bement v. National Harrow Co., 186 U. S. 70, 22 Sup. Ct. 747, 46 L. Ed. 1058, and Heaton-Peninsular Co. v. Eureka Co., supra.

The peculiar question presented by the present case is whether such a license system can be created by oral notices, advertisements, written contracts with the purchasers of the machines, and a substantially uniform and complete method of bringing home to all persons engaged in the trade actual knowledge of the existence of the licenses in question.

It need not be decided in this case whether the purchaser of a secondhand machine, who could show that he had no knowledge whatever of the existence of a license, might be free from a suit for in-

fringement, prior to the time when such a license was brought to his attention. Nor need we consider the exact position of each one of the present owners of a secondhand machine of the complainant, for the testimony shows that substantially all of these owners of secondhand machines had knowledge, from which they must be presumed to have been warned, of the existence of the license in question, and, as has been said previously, substantially all of the machines referred to in the testimony were shown to have been originally sold under a license, good as against the original purchaser, and against any one, at least having reason to know that the license had existed.

The testimony of the individual defendants themselves, especially in connection with the exhibit called the "New England Bottling Company letter," proves that the defendants were endeavoring to sell their product (which it may be admitted they had a right to make and sell) to any one who could be induced, by considerations of cheapness or preference, to use their caps. The defendants contend that they have the right to assume that the persons purchasing were entitled to buy, in that they claim they are not shown to have had knowledge that these purchasers were making any use, or purposed to make any use of this product, in violation of the licenses in question.

The defendants claim that the burden is not on them to make sure that their customers were properly and legally respecting their license rights and the patents of the complainant, but that, on the other hand, the burden rests upon the complainant to show that it has made sales to parties for the very object of a violation of license rights, if these license rights are held valid. But the defendants further contend, and apparently believed at the time of writing the New England Brewing Company letter: (1) That no such license rights could be maintained with respect to the complainant's patents; (2) that such license rights could not be enforced against the users of the machines purchased from any source other than the complainant; and (3) that they were not responsible, as has been said, unless they were shown to have had actual knowledge of the situation, even if the first two propositions be decided against them.

But it seems to the court that the complainant has made out a case upon which it must be held that it was entitled to insist on certain license rights, such as it exercised under its patents; that subsequently practically all of the parties who have been shown to be customers of the defendants could not use caps other than those of the complainant, without laying themselves open to a suit for infringement; and that the defendants knew of the substantial uniformity of the complainant's license system, knew that practically no machines were in actual use except those of the complainant, and knew that its customers were, in almost every instance, liable to the effects of an action for infringement, unless the validity of the licenses could be successfully attacked, when the question should be raised.

All the cases which have been brought to the court's attention involve license rights of which notice was given by a plate or inscription, made a part of the patented machine itself. Thus knowledge of the license in each case was brought home to all persons using or having possession of the machine. Such an inscription or plate upon the ma-

chines of the complainant would remove one of the greatest elements of uncertainty in the present case; but it is considered that the knowledge possessed by the defendants in the present action, of the substantially universal license system of the complainant, and of the extremely limited sale of the caps in question, possible to persons not affected in some way by the complainant's rights under these licenses, put the defendants upon notice, and made it necessary for them to avoid sales to persons who could only use the caps in such a way as to infringe the complainant's patents.

In the case of Cortelyou v. Charles E. Johnson & Co., 145 Fed. 935, 76 C. C. A. 457, the court said:

> "To compel the dealer to make inquiries and take the precautions necessary to save himself from being sued as an infringer would place intolerable burdens upon business."

But this holding would not apply, it seems, to sales made under such circumstances, and to parties where the vendor had reason to know that a violation of patent rights was being invited and induced. In the present case the testimony shows exactly this condition of affairs, with a total disregard of the validity of the licenses, because of an apparent reliance on the part of the defendants upon an ability to show that in some instances caps might be applied to machines carrying no permanent notice of the license, in the hands of purchasers from licenses, and instances where these caps might be applied by machines contended by the users not to infringe the complainant's patents.

In the case of National Phonograph Co. v. Walker (C. C.) 169 Fed. 146, the court refused to determine, upon an application for a preliminary injunction, the scope of a license relating to phonograph records, in the hands of persons other than the original licensee; but no reported case seems to have passed upon the precise question here considered, and the defendants cannot justify their attempts to sell, and their sales, of caps, to any customer who may buy, in the face of their knowledge of the rights claimed by the complainant, unless they can justify sales to licensees themselves, and should be enjoined from selling to any parties as to whom they cannot show justification, with an accounting for profits on all sales made to those at least who knowingly have machines issued under licenses of the complainant, and upon which the caps sold by the defendants were in fact used.

It is true that the New England Brewing Company letter resulted in no sale, and an injunction could not issue for a mere inducement to consider an act of contributory infringement, where the matter never proceeded beyond the question of discussion; but the position taken by the defendants in that letter, and their statements upon the witness stand, are sufficient to justify the issuance of an injunction against them, restraining them from selling their caps to any person who is restricted in the use of such caps to machines manufactured by the complainant, and sold under a license, and to an accounting for any profits which may have been derived from such sales as can be proven to have been made to such parties, and where it cannot be affirmatively shown that the use made of the caps sold was not in violation of the license.

The first patent covering the method and the machine for using that method has expired. The testimony does not show with exactitude just which machines, and under which patents, the licenses affecting the defendants' customers have been issued; and it necessarily follows that sales made since the expiration of this patent, of caps to be used upon machines as to which the patent has expired, could not be contributory infringements of such patents. It also necessarily follows that a license to use a patented machine, and to employ only certain methods or certain products in such use, ceases to be a patent question with the termination of the period as to which any right of monopoly can be enforced. The right of enjoyment, which is secured under the license, would be a mere question of contract, after the expiration of the patent itself. The present action was begun and tried before the patent expired, and at that time the complainant was entitled to an injunction and accounting. All other questions can be disposed of upon the accounting, and the complainant may have an injunction, accordingly, against the defendant corporation.

As to the individual defendants, the testimony shows that they are engaged in the cork business, and formed the defendant corporation for the purpose of manufacturing and supplying caps of the nature described, in which they have made use of the cork disk previously referred to. The testimony as to the amount of capital stock paid in, the persons interested in the formation and conduct of the business, and all of the circumstances connected therewith, indicate that the three individual defendants organized the corporation for the sole purpose of enabling them as individuals to carry on, in corporate form, a side line or business, in which they could as individuals have the entire management and direction, but in which they would not be responsible beyond the small amount of investment shown in the present case.

The property of the corporation has been shown to have been largely destroyed by fire, and yet the individual defendants have proceeded to carry on the activities of the business, and the personal element of the three individual defendants has been present in all acts of the corporation set forth in the testimony. Upon these facts, under the authority of such cases as Peters v. Union Biscuit Co. (C. C.) 120 Fed. 679, Saxlehener v. Eisner (C. C.) 140 Fed. 938, affirmed 147 Fed. 189, 77 C. C. A. 417, and Whiting Safety Catch Co. v. Western Wheeled Scraper Co. et al. (C. C.) 148 Fed. 396, it must be held that the individuals were properly joined as defendants, that they should be united with the corporation in any decree that may be made, and that they should personally be held responsible for the expenses of the litigation in case the corporation is unable to answer therefor.

The complainant may have a decree in accordance with the foregoing against all the defendants.