## INDIANA MFG. CO. v. NICHOLS & SHEPARD CO.

(Circuit Court, E. D. Michigan, S. D. November 14, 1910. On Exceptions to Answer and Motion to Strike out Cross-Bill, May 26, 1911.)

1. PATENTS (§ 212*)—RIGHTS OF LICENSEE—SALE IN VIOLATION OF CONDITIONS.

Where a licensee under a patent entitling him to use a patented machine under certain conditions only, undertakes to use the machine otherwise than in conformity with such conditions, he loses the protection of his license, and is liable as an infringer.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312–314; Dec. Dig. § 212.*]

2. PATENTS (§ 211*)—LICENSE—CONDITIONS.

Where a license, authorizing defendant to use certain patents, provided that defendant should maintain specified prices and should place certain trade-mark plates on each machine containing any of the patented improvements, that it should also make reports of sales and pay money for royalties, the provisions as to the maintenance of prices and the application of trade-marks operated as conditions to defendant's right to use the patent, though not so as to the provisions for reports of sales and for payment of royalties.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 304–311; Dec. Dig. § 211.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

3. PATENTS (§ 209*)—LICENSES—VALIDITY—CONDITIONS—PRICE RESTRICTION.
A price restriction in a patent license is a valid condition.
[Ed. Note.—For other cases, see Patents, Dec. Dig. § 209.*]

4. SPECIFIC PERFORMANCE (§ 71*)—PATENT LICENSE—CONDITIONS.
Where a license to manufacture and use patents in the construction of certain machines, contained conditions that certain sets of labels, furnished by the licensor, and embodying his trade-mark, should be affixed to every machine made under the license, and that the licensee should maintain a specified schedule of prices, such covenants were affirmative in character and proper subjects of a bill for specific performance.
[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 204; Dec. Dig. § 71.*]

5. PATENTS (§ 212*)—LICENSES—VIOLATION—ELECTION OF REMEDIES.
Where a patent licensor conceives that the licensee is operating outside the agreed field, the licensor may elect to disregard the license and sue for infringement, or, if he can show that he has no sufficient legal remedy, he may sue in equity for specific performance.
[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312-314; Dec. Dig. § 212.*]

6. COURTS (§§ 290, 307*)—FEDERAL COURTS—JURISDICTION.
A bill for infringement of a patent presents a controversy under the laws of the United States within the jurisdiction of the federal courts, regardless of citizenship, while a bill for specific performance of a patent license can only be maintained in a federal court in case the requisite diversity of citizenship appears.
[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 832, 850-854; Dec. Dig. §§ 290, 307.*
Jurisdiction of federal courts, in suits relating to patents, see note to Bailey v. Mosher, 11 C. C. A. 313.]

7. PATENTS (§ 129*)—LICENSE—ESTOPPEL.
Where a patentee licenses the use of the invention, the patentee may not deny the licensee's right to act under the patent, nor may the licensee dispute the validity of the patent within the scope of the license, but the patentee cannot sue the licensee for infringement on the ground that he is operating outside the conditions of the license and at the same time claim that the licensee, by reason of the license, is estopped to dispute the validity or effect of the patent.
[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 182½-186; Dec. Dig. § 129.*]

8. SPECIFIC PERFORMANCE (§ 5*)—PATENT LICENSE—ADEQUATE REMEDY AT LAW.
Where a license to embody patents in certain machines provided that the licensee should maintain a specified schedule of prices and that none of the machines containing the inventions should go into the market unless branded with the patentee's trade-marks, etc., the patentee had no adequate remedy at law for a violation of such conditions, and was therefore entitled to sue for specific performance.
[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 5-8; Dec. Dig. § 5.*]

9. SPECIFIC PERFORMANCE (§ 5*)—ADEQUATE REMEDY—DAMAGES—PENALTY.
A license to use patents in certain machines contained conditions as to the manner of use, and declared that, on the licensee's failure to attach the patentee's labels to machines containing the inventions, it should pay the licensor $100 as liquidated damages "now estimated, determined, and agreed upon." *Held*, that such clause provided for a penalty and not for liquidated damages, and that its presence in the contract did not conclu-

---

sively establish that the patentee had an adequate remedy at law sufficient to preclude specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 5–8; Dec. Dig. § 5.*]

On Exceptions to Answer and Motion to Strike Cross-Bill.

10. EQUITY (§ 249*)—ANSWER UNDER OATH—WAIVER—EXCEPTIONS.

Exceptions for insufficiency will not lie to an answer to a bill which is not essentially one for discovery, and which expressly waives an answer under oath.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 521; Dec. Dig. § 249.*]

11. EQUITY (§ 140*)—DISCOVERY—ANSWER UNDER OATH—WAIVER.

Where a bill was not essentially one for discovery and expressly waived answer under oath, complainant was not entitled to have defendant answer under oath a list of interrogatories attached to the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 317, 318; Dec. Dig. § 140.*]

12. EQUITY (§ 198*)—CROSS-BILL—LEAVE.

A cross-bill in equity cannot properly be filed without leave of court.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 460–462; Dec. Dig. § 198.*]

13. EQUITY (§ 197*)—CROSS-BILL—ACCOUNTING.

Where, in a suit in the nature of a bill for specific performance, complainant prayed for an accounting under a patent license, defendant was not for that reason precluded from filing a cross-bill against complainant for an accounting of matters arising out of the contract in order to save such right in case complainant elected to dismiss before hearing.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 455–459; Dec. Dig. § 197.*]

In Equity. Bill by the Indiana Manufacturing Company against the Nichols & Shepard Company. On demurrer to complaint, on exceptions to answer, and on motion to strike out cross-bill. Demurrer to complaint, and exceptions to answer overruled. Motion to dismiss cross-bill denied.

The defendant demurs to a bill of complaint which seeks to enforce rights dependent on or connected with a "license and agreement" of June 10, 1902, between complainant, as licensor and the defendant as licensee. This agreement recited that the licensor was the owner of various letters patent pertaining to pneumatic stackers, and that among such letters patent are those enumerated in a list of patents, identifying by number and date, fifty-five such patents, with issue dates running from 1892 to 1901. It also recites that the licensor "by means of exclusive license contracts, and otherwise, controls various other inventions and improvements." Thereupon, a license, not exclusive, was granted to the licensee under any and all the patents, such license being upon the conditions that a license fee be paid upon each machine embodying any of the inventions; that settlements of accounts would be rendered and made at stated periods; that certain sets of labels be furnished by the licensor, each set "composed of one label bearing a list of patent dates and two medallions embodying the trade-mark of" the licensor to be affixed to every machine made under the license, it being recited that this requirement is "one of the conditions of granting the license"; that for each failure so to attach such labels to any machine embodying any such inventions the licensee should pay to the licensor "the sum of one hundred dollars as liquidated damages now estimated, determined and agreed upon"; that the schedule of selling prices should be maintained; that the licensee should

have the right to use all improvements made or required hereafter by the licensor, and that all the terms and conditions of this agreement should apply to all such newly obtained or acquired patents and inventions; that the licensee should be entitled to as favorable terms as may be accorded to any other licensee; and that the agreement should continue to the end of the term of each patent owned by the licensor.

The bill is, in its general frame, a patent infringement bill, but also sets up at length the license agreement, and alleges that defendant, after continuing under and recognizing the agreement for some years, is now refusing to recognize it, and although manufacturing the identical machine which it manufactured under the license, is declining to pay license fees, attach the agreed labels, or otherwise recognize the agreement.

The main grounds of demurrer are that the validity of and title to the patents are not sufficiently averred for an infringement bill; that the contract is not such a one as a court of equity can enforce, and that complainant has a complete and adequate remedy at law. In this connection, it appears that substantially the same contract was involved in the cases reported in Indiana Mfg. Co. v. Case Mach. Co. (C. C.) 148 Fed. 21, and Id. 154 Fed. 365, 83 C. C. A. 343, but that the patents which were in those decisions chiefly considered have now expired.

Harold A. Taylor and C. C. Linthicum, for complainant.
Williams & Lewis and Parkinson & Lane, for defendant.

DENISON, District Judge (sitting by designation, after stating the. facts as above). · [1] Whatever doubts may have been suggested by the Supreme Court (Cortelyou v. Johnson, 207 U. S. 200, 28 Sup. Ct. 105, 52 L. Ed. 167; Bobbs-Merrill Co. v. Straus, 210 U. S. 345, 28 Sup. Ct. 722, 52 L. Ed. 1086) or intimated in the Second Circuit (by the action of the Court of Appeals [1] on the appeal from Crown Cork & Seal Co. v. Stopper Co. [C. C.] 172 Fed. 225), it is undoubtedly the established rule of patent law in this circuit that when a licensee, who is entitled to use a patented machine under certain conditions only, undertakes to use the machine otherwise than in conformity with those conditions, he loses the protection of his license and he becomes an infringer (Button Fastener Cases, 77 Fed. 294, 25 C. C. A. 267, 35 L. R. A. 728; Rupp & Wittgenfeld Co. v. Elliott, 131 Fed. 730, 65 C. C. A. 544). The principle seems to be that the license is limited in its operation, and that, since in the case of a territorial limit the license has no existence in the exempted territory, so in case of other limitations the license has no existence in the exempted field. ;

I see no distinction in principle between the decided cases · in this circuit and the present case, in so far as concerns the nature of the limitation placed upon the license. It cannot be controlling whether or not the license uses the word "condition"; and if that word is used, the exact and technical, grammatical construction of the sentence· in which it is found will not settle the question whether it refers to a condition precedent or condition subsequent.

[2] The substantial intent of this contract was that the condition should be one accompanying the exercise of the rights granted by the license, and that unless such exercise was accompanied by the performance of such condition, the exercise itself was not to be permitted. Obviously this comment does not apply to the agreements to make reports and to pay money—things which cannot be done until after the sale is made, and, therefore, cannot be steps upon which the right to

[1] 175 Fed. 1019, 99 C. C. A. 664.

sell is dependent; but does have reference to the trade-mark and price restriction provisions.

[3] The price restriction, as a license condition, has been often sustained, but does not seem to be counted upon in this bill; and a condition that the license shall not attach to any machines except those of a certain quality of material or those painted a certain color or those bearing certain distinguishing marks would seem to be well within the patentee's right of total exclusion. I think, therefore, that the bill states a case of infringement of the patents or of some of them; but it seems clear that it cannot be sustained as merely an infringement bill; and this for the reason that it omits several allegations bearing upon the validity of and the title to the patents, which allegations are well understood to be essential to such a bill.

[4] The bill also has the aspect of one for specific performance. Although Judge Baker, in Indiana Mfg. Co. v. Case Mfg. Co., 154 Fed. 366, 83 C. C. A. 343, said that a similar bill was not one for specific performance, I doubt whether this passing remark was carefully considered. The bill states a contract between complainant and defendant that, if defendant manufactured and sold certain machines, it would do so only upon certain conditions, and it would not violate those conditions. This may be considered as an affirmative covenant by defendant that, if the subject-matter thereafter comes into concrete existence, the defendant will observe and keep certain promises and agreements, or it may be considered, from the negative standpoint, as a negative agreement that defendant will not, under any circumstances which may arise, do certain things. In either aspect, it is distinctly within the recognized definition of bills for specific performance, and comes within that head of equity jurisdiction. Pomeroy's Equitable Remedies, §§ 271, 288. A covenant not to maintain, on granted real estate, any building in which liquor is sold is a familiar example of this class of contract. The grantee cannot be compelled to maintain any building at all, but, if he does, then this agreement not to sell liquor can be specifically enforced by injunction. If, then, we adopt this name for this bill, there remains, on that subject, only the question always presented by a bill for specific performance, viz., is there no adequate remedy at law?

[5] I do not understand that an insufficient bill, for the infringement of a patent, can be united with a bill of complaint good under some other ground of equity jurisdiction, and so become itself sufficient as an infringement bill. I think the patent lessor who conceives that the lessee is operating outside of the agreed field has his election. He may disregard the license and proceed as for infringement; or he may, if he can show that he has no sufficient legal remedy, demand from a court of equity a decree for specific performance. He cannot do both, because the two are distinctly inconsistent.

[6] One bill would present a controversy under the laws of the United States, and this court would have jurisdiction regardless of citizenship; the other would show no jurisdiction, unless on the ground of citizenship. One would not be dependent in any degree upon the existence of the license; the other would depend wholly upon such license.

The rule announced in the first Button Fastener Case was merely what was thought to be the necessary, logical application of the then well-established territorial rule; and we may well treat the present question by analogy to that territorial rule. If the complainant had licensed defendant to manufacture and sell machines in Indiana, but not elsewhere, and had then learned that the defendant was manufacturing and selling in Michigan, it might, and probably would, file an ordinary, plain infringement bill. Such a license could not then be urged by defendant as any defense, because it would not be pertinent to the act complained of; and so it would seem that, in such a bill, complainant could take nothing whatever from the existence of the license. It would be substantially accurate to say that the license did not exist in Michigan.

[7] The estoppel must be mutual. The licensee may not deny the patentee's title to the monopoly; the patentee may not deny the licensee's right to act under that monopoly. It is difficult to see how, when the act involved is the manufacture of a certain machine, at a specified place or in a specified way, and both complainant and defendant agree that there is no contract in existence permitting the act in controversy, either party can be estopped by a contract relating to something else.

We may apply, further, by analogy, the rule of landlord and tenant, which is the basis of estoppel by a patent licensee. If the landlord claims title to lots 1, 2, and 3, and leases to the tenant lots 1 and 2, and the tenant then undertakes to occupy lot 3, the lease would not be a bar to ejectment by the landlord for lot 3, nor would the lessee be estopped to deny the landlord's title to lot 3. It seems to me quite clear that the complaining patentee cannot, at the same time, maintain the position that the act of the defendant licensee, manufacturing what is said to be the patented article, is outside the conditions of the license, and, therefore, not authorized by the license, and also the position that his title to the monopoly is conceded by the license and, therefore, cannot be disputed. The Button Fastener Cases in this circuit were, in form, complete and perfect infringement bills, alleging everything necessary in such a bill, and proceeding upon the theory that the act of the defendants was contributory infringement. The allegations regarding the existing license system and its conditions and the transgression of those conditions were necessary in describing and making out the act of infringement, but they did not transform the infringement bill, pure and simple, into anything else. So far as I can judge from the reports, all the other cited cases of this class were of the same character.

[8] There remains the question whether the bill, considered as one for specific performance, is good; and, after what has been said, this depends upon whether there is an adequate remedy at law. The remedy at law is clear, and is, I think, adequate, so far as concerns the nonpayment of royalties (Washburn, etc., Co. v. Cincinnati Wire Co. (C. C.) 42 Fed. 675) and very probably so far as concerns the non-making of reports; but it seems to me otherwise as to the covenant to mark the machines with a distinguishing trade-mark. Complainant insisted that no machines, embodying any one of its patents, should go

on the market unless they were branded accordingly, and thus their merits would serve to advertise and enhance the public estimation of complainant's patents and complainant's general license system. The right to have this agreement carried out may be a very valuable right, as alleged, and it is not easy to see how, as a primary question, its breach could be adequately measured in damages. Like all contracts pertaining to good will, it is impossible to formulate any sure measure of damages; but such an agreement can be enforced, indirectly, by injunction, or, perhaps directly, by affixing the marks under the super-vision of the court. Concluding, as I do, that the injury alleged is irreparable in damages, it is not necessary to inquire whether the bill shows equity jurisdiction on the ground of avoiding multiplicity of suits, other than those to collect royalties.

[9] We come, then, to the secondary question whether, if there otherwise had been no adequate remedy, such remedy is given by the penalty clause. I do not think it is. This clause seems to me obviously a penalty only, in spite of the form in which it is clothed. It provides for the same amount under all circumstances, whether for the omission of one, two, or three of the prescribed marks, and even in a case where the full object of the marking might be accomplished in some other way. It is doubtful whether this provision would be enforced by any court of law or equity, and it seems to me it does not constitute an adequate legal remedy. Defendant suggests that the patent mark label cannot be applied as required because it states untruths regarding the patents embodied in the machines. If so, this is an additional reason why the penalty clause remedy is not adequate. The defendant would not be, by law, permitted to attach one of the three labels, and yet its absence would call for the full penalty. I conclude that the demurrer, so far as it is directed against the bill as one for infringement merely, should be sustained, and should, otherwise, be overruled. It is true that in one sense the issue of infringement is fully presented by the specific performance aspect of the bill, because it may be necessary for the court to determine whether defendant's structures do or do not "embody any of the above-mentioned inventions or improvements"; but the necessity of determining this question does not classify the bill as one for infringement. Such questions are frequently passed upon by state courts in accounting proceedings under licenses, and even if they do not involve the construction of the patent far enough to raise a federal question, still, in this case, there is ample jurisdiction by diverse citizenship.

The clauses of the demurrer, challenging the validity of the license contract upon the grounds of public policy, have not been considered because their consideration was, upon the argument, postponed until final hearing; and so far as these same clauses raise the question of equity jurisdiction, are distinguished from the question of validity, I do not think the allegations of the bill make a case obnoxious to the rule of Pope Mfg. Co. v. Gormully, 144 U. S. 224, 12 Sup. Ct. 632, 36 L. Ed. 414.

On Exceptions to Answer and Motion to Strike Out Cross-Bill.

Complainant files 29 exceptions. They can be sufficiently considered in groups.

[10] The exceptions for insufficiency must be overruled. The bill is not, essentially, one for discovery, and it expressly waives answer under oath. It is the settled rule that exceptions for insufficiency will not lie to an answer to such a bill: McFarlane v. State Savings Bank (C. C.) 132 Fed. 399. Judge Hunt's statements and conclusions are in accordance with what has always been my understanding of the equity practice.

[11] In spite of the general waiver of oath, complainant attached to the bill a list of interrogatories which it demanded should be answered specifically under the oath of an officer of the defendant corporation. It seems doubtful whether such an oath could ever be demanded, and in the absence of an effective demand for answer under oath, the general rule above stated would apply to these interrogatories as well, and exceptions for failure to answer the same would not be good. However that may be, I think these exceptions must be overruled on broader grounds. The amendment to General Equity Rule 41, on which complainant depends to support this practice, was adopted 40 years ago, and in the particular in which it seems to permit a general waiver of oath and yet a demand for oath in the answer to special interrogatories, it was an attempt to provide for the situation which would arise from the then recent statute making a party a competent witness. The full effect of this statute, in the substantial abolishing of bills of discovery, was not then understood. I do not find cases in which this portion of this amendment has been applied, and I have never been familiar with its application in the way now sought. Such practice has never, to my knowledge, existed in this district, but the general rule that waiver of oath invalidated exceptions for insufficiency has been frequently applied. It is to be presumed, from the existence of this clause of this rule, that there are cases to which it may apply; but in the present case, the interrogatories either propounded questions which the defendant, in advance of an interlocutory decree for complainant, ought not to answer, or else propounded, in another form, the same issues which had been tendered by the general body of the bill to which answer under oath has been waived. Whatever might be the rule in some cases, I am satisfied that, under these circumstances, exceptions for failure to answer the interrogatories to which sworn answer was requested, should not be sustained.

Other exceptions are upon special grounds of alleged impertinence and irrelevance, with reference to what may be classed as minor detail. The exceptions of this class should be overruled, either because the matter involved is not important enough to justify the machinery of exceptions for its elimination, or because its impropriety is not clear enough to support excluding it from the pleadings in this preliminary way.

What appeal to me as the important exceptions, raise, in one form or another, one of the underlying questions—perhaps the main one—

in the case. This, as has been decided, is not a bill for infringement, but one in analogy to, if not in very form, a bill for specific performance. The license contract purports to rest upon and grant licenses under patents which defendant now classifies as (1) one or more primary patents; (2) a large number of secondary patents of narrow scope and little or no validity, and covering details, many of which were never used by any one; (3) an indefinite mass of future and unknown patents which might be acquired, and inventions which might be made. If I understand defendant's substantial position, it is that so far as the contract was one under the primary patents (but which have now expired), it was valid under the patent law, and is so recognized by defendant, but that so far as the contract pertains to the second and third classes above cited, or, in other words, after the expiration of the primary patents, the contract was invalid as amounting to a subterfuge to evade the anti-trust law; and that, in any event, defendant can show that its product is not within any of these two later classes of patents, and, therefore, may show the scope of such patents.

I do not think the questions presented along these lines should be decided on exception. The scope and bearing of the questions can be more safely determined from the proofs than from uncertain and arbitrary constructions to be placed upon the language of the pleader. I am not willing to say, now, that the proffered issues of scope and even of validity may not have a bearing either on what structures the contract covers or on the intent to make in good faith a contract permitted by the patent law rather than one prohibited by the anti-trust law. Every question suggested can be, without prejudice, saved for final hearing; and, while so doing may lead to the taking of some testimony which would not be taken if these exceptions were sustained, yet that is a less evil than if the case were eventually to be sent back by the Court of Appeals for further testimony because exceptions had been erroneously sustained.

The validity, or applicability, of the Indiana statute, pleaded by defendant (requiring the record of certain patent contracts), is challenged by some of the exceptions. So far as I now see, this question is presented by the pleadings as perfectly as it will be on final hearing, yet it is not impossible that the circumstances attending the execution of the contract, and the system of contracts to which it may appear to belong, may have some bearing on whether it comes within the lawful scope of the Indiana statute. A decision, now, on this point, either way, could not finally dispose of the case, and passing the question until final hearing will tend to simplicity in the ultimate result.

There are also exceptions to the alleged defense that complainant has fraudulently violated the "better terms" provision of the license. I think the terms of the answer are sufficient to support proofs of the transactions complained of. Whether they make out a good defense or counterclaim can then be determined.

It may be that some of the exceptions do not clearly fall into any of the groups which have been mentioned, but I think they are all suffi-

ciently covered by what has been said; and they will all be overruled. I see no occasion for encouraging the practice of exceptions. It often leads us, as in this case, into a maze of refinements of pleading, that serves, generally, no good purpose; although there are cases where an issue tendered is so clearly and certainly foreign that it should be stricken out on exceptions.

[12] The cross-bill was filed without leave, and is irregular in that respect; but an order may now be entered granting, nunc pro tunc, leave to file the same.

[13] The substantial criticism on the cross-bill is that it claims an accounting and a balance of indebtedness against the complainant in the matter of the contract involved; and it is said that, without the cross-bill, the accounting prayed for by complainant will give to the defendant this same relief, and so the cross-bill should not be maintained.

It may be that in the accounting to be had under the bill there could be an affirmative decree in favor of the defendant (though this seems contrary to the familiar rule); but there would be nothing to prevent the complainant from dismissing the bill at any time before the case was brought on for hearing. In such a situation, the defendant has a right to file a cross-bill for the sake of holding on to the case, in order to obtain such affirmative relief.

The motion to dismiss the cross-bill will be denied.